1
2
3
4
5
6
7            IN THE UNITED STATES DISTRICT COURT

8          FOR THE EASTERN DISTRICT OF CALIFORNIA

9  JARED ALLISON, et al.,

10              Plaintiffs,                    CIV. NO. S-08-2716 JAM GGH

11        vs.

12  STEPHEN JOHANSON, et al.,

13              Defendants.                    ORDER

14  _____/

15              On April 29, 2009, this court conducted an informal telephone conference at the

16  parties' request.  At issue were documents requested by plaintiffs over which defendants had

17  claimed privilege.  On conclusion of the conference, this court directed the parties to file letter

18  briefs which have now been submitted.[1]  Defendants have also submitted two documents for *in*

19  *camera* review.  After reviewing the letter briefs and the documents, the court now issues the

20  following order.

21  BACKGROUND

22              Plaintiffs Mr. and Mrs. Allison were at the Vallejo campus of Solano County

23  Community College on December 17, 2007 to conduct business.  Mr. Allison claims that

24  defendant Johanson, at that time a police officer employed by the Solano County Community

25  _____
26       [1]  The requirements of E. D. Local Rule 37-251 have been dispensed with in the interest of expediting this decision.

1

1    College District ("District") used excessive force to make a false arrest, violating Mr. Allison's

2    civil rights under 42 U.S.C. § 1983.  He also alleges false police report and denial of due process.

3    Criminal charges were dismissed before trial.  Mrs. Allison claims negligent infliction of

4    emotional distress in addition to violation of her civil rights based on her presence at the incident.

5    Both plaintiffs have also sued Mike Dawson, District Police Chief, for supervisory liability in

6    failing to properly train and supervise Johanson.  The complaint additionally contains state law

7    claims and seeks compensatory damages against both defendants and punitive damages against

8    defendant Johanson.

9         The documents submitted for *in camera* review concern an incident which

10   occurred on February 12, 2008 and involved Johanson.  Officer Johanson was hired by the

11   District on November 12, 2007, and he was released from probation and his employment

12   terminated on February 26, 2008.  Defendants claim the documents are privileged, subject to

13   Johanson's privacy rights, irrelevant, and not likely to lead to discovery of admissible evidence.

14   STANDARDS

15         General.  "Parties may obtain discovery regarding any matter, not privileged,

16   which is relevant to the claim or defense of any party...."  Fed. R. Civ. P. 26(b)(1).  Relevancy is

17   to be considered broadly, to include "any matter that bears on, or that reasonably could lead to

18   other matter that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc.

19   v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389.  Accordingly, the court must determine

20   whether the information sought is relevant and not privileged.

21         Federal law applies to privilege based discovery disputes involving federal claims,

22   even if supported by pendent state law claims.  See, e.g., Pagano v. Oroville Hospital, 145 F.R.D.

23   683, 687 (E.D.Cal. 1993);[2] Martinez v. City of Stockton, 132 F.R.D. 677, 681-83 (E.D.Cal.

---

25       [2]  Despite the observations in a few cases that Pagano had been implicitly overruled by
the Supreme Court (on matters unrelated to the proposition advanced herein), no such overruling
26   ever took place.

2

1  1990).  Privileges are narrowly construed, because they impede the full and fair discovery of the

2  truth.  Eureka Financial Corp. v. Hartford Acc. and Indemnity Co., 136 F.R.D. 179, 183 (E.D.

3  Cal. 1991).  Further, the party asserting a privilege has the burden to establish that it applies.

4  See, e.g., United States v. O'Neill, 619 F.2d 222, 227 (3rd Cir. 1980).

5         The Supreme Court has reemphasized that privileges are not favored:

6         The common-law principles underlying the recognition of
       testimonial privileges can be stated simply.  "'For more than three
7         centuries it has now been recognized as a fundamental maxim that
       the public . . . has a right to every man's evidence.  When we come
8         to examine the various claims of exemption, we start with the
       primary assumption that there is a general duty to give what
9         testimony one is capable of giving, and that any exemptions which
       may exist are distinctly exceptional, being so many derogations
10        from a positive general rule.'"

11  Jaffee v. Redmond, 518 U.S. 1, 9, 116 S. Ct. 1923, 1927 (1996) (citing United States v. Bryan,

12  339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (quoting 8 J. Wigmore, Evidence §

13  2192, p. 64 (3d ed.1940)); see also Maricopa Audubon Soc. v. U.S.F.S., 108 F.3d 1082, 1085-86

14  (9th Cir. 1997).

15         In cases presenting 42 U.S.C. § 1983 civil rights claims concurrently with state

16  law claims, courts disagree about the extent to which state privilege law remains applicable in

17  discovery disputes. The Supreme Court explicitly noted in Jaffee that the issue is unsettled.

18  Jaffe, 518 U.S. at 15 n.15, 116 S. Ct. at 1931 n.15 (noting disagreement concerning the proper

19  rule in cases in which both federal and state claims are asserted in federal court.)  This court has

20  found that in mixed federal and state claim cases, although federal law is ultimately binding, state

21  privilege law which is consistent with its federal equivalent significantly assists in applying

22  privilege law to discovery disputes.  See Pagano; Martinez; Cook v. Yellow Freight, 132 F.R.D.

23  548 (E.D.Cal. 1990).  Other courts, however, disagree.  See, e.g., Jackson v. County of

24  Sacramento, 175 F.R.D. 653, 654 (E.D.Cal. 1997) (stating that Pagano/Martinez/Cook have been

25  \\\\\

26  \\\\\

3

1  overruled);[3] <u>Allen v. Woodford</u>, 2007 WL 309485 (E.D. Cal. 2007).

2       This court considers state law in mixed federal/state claims.  <u>See</u> <u>Pagano</u>.  While

3  federal law is controlling, <u>id</u>. at 687, state law is nevertheless relevant, especially in mixed claims

4  where one of the elements of the federal claim is that a *state* actor was acting under color of *state*

5  law when the federal right was violated – a category which includes every 42 U.S.C. § 1983

6  action.[4]  It has been the policy of this court, "when state privilege law is consistent, or at least

7  compatible, with federal privilege law," to read the two together "in order to accommodate the

8  legitimate expectations of the state's citizens."  <u>Id</u>. at 688; <u>accord</u> <u>Martinez</u>, 132 F.R.D. at 681

9  ("application of state rules [is appropriate] when that application would not be inconsistent with

10  federal law"); <u>but</u> <u>see</u> <u>Folb v. Motion Picture Industry Pension & Health Plans</u>, 16 F. Supp.2d

11  1164, 1170 (C.D. Cal., 1998) (refusing to consider state privilege law); <u>Jackson</u>, 175 F.R.D. 653,

12  654 (E.D.Cal. 1997) (same).  Several reasons justify this policy.  First, as previously mentioned,

13  the Supreme Court explicitly noted in <u>Jaffe</u> that the matter is unsettled.

14       Second, not only this court, but others as well, use state law to assist in defining

15  the parameters of federal privilege.  <u>See, e.g.</u>, <u>Memorial Hospital etc. v. Shadur</u>, 664 F.2d 1058,

16  1061 (7th Cir. 1981); <u>Hysell v. Pliler</u>, 2007 WL 273882 *1 (E.D. Cal. 2007); <u>Gottleib v. Wiles</u>,

17  143 F.R.D. 235, 237 (D.Colo. 1992); <u>Wei v. Bodner</u>, 127 F.R.D. 91, 94-95 (D.N.J. 1989); <u>Unger</u>

18  <u>v. Cohen</u>, 125 F.R.D. 67, 69 (S.D.N.Y. 1989); <u>Lora v. Board of Education</u>, 74 F.R.D. 565

19  (E.D.N.Y. 1977).

20       Third, federal courts frequently look to state law for guidance in § 1983 lawsuits.

21  Indeed, the Supreme Court has recognized:

22  \\\\\

---

[3]  <u>Jackson</u> is based on the questionable premise that the Supreme Court's failure to consider the issue impliedly overrules cases discussing the issue.

[4]  Those who interpret the trilogy of <u>Pagano</u>, <u>Martinez</u>, and <u>Cook</u> as standing for the proposition that state privilege law is ultimately controlling in mixed claim situations have misread the cases.

> In 42 U.S.C. 1988, Congress quite clearly instructs federal courts
> to refer to state statutes when federal law provides no rule of
> decision for actions brought under § 1983 . . . . [B]y its terms,
> §1988 authorizes federal courts to disregard an otherwise
> applicable state rule of law only if the state law is inconsistent with
> the Constitution and laws of the United States.

Board of Regents, etc v. Tomanio, 446 U.S. 478, 484-85, 100 S. Ct. 1790, 1795 (1980)

(quotations and citiations omitted).

Further, the Court has acknowledged:

> This statutory reliance on state law obviously means that there will
> not be nation-wide uniformity on these issues [contemplated by
> §1988].

Robertson v. Wegmann, 436 U.S. 584, 594 (n.11), 98 S. Ct. 1991, 1997 (1978).  See also Moor

v. County of Alameda, 411 U.S. 693, 701-702, 93 S. Ct. 1785, 1791-1792 (1973) (§ 1988 does

not permit wholesale incorporation of state causes of action, but state law may supplement

established federal law).  The preceding Supreme Court cases, while not directly on-point with

the privilege issues presented by this discovery dispute, nevertheless stand as strong authority for

the principle that application of state law is not foreign to § 1983 jurisprudence.  Lower court

cases such as Kelly, concluding "[i]t would make no sense to permit state law to determine what

evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to

protect citizens from abuses of power by state and local authorities," Kelly v. City of Stockton,

114 F.R.D. 653, 656 (N.D. Cal. 1987), assuming such cases advocate no role for state law, fail to

consider congressional intent that state law play an important, and at times dispositive, role in §

1983 litigation.[5]

Fourth, recognition of important state interests which do not conflict with federal

law is a bedrock principle of our federal system.  "Consideration under the Supremacy Clause

---

[5] While the notion of national uniformity in federal practice, assuming that such is
possible, is a worthy goal for which to strive in the usual situation, Congress was less concerned
with national uniformity in setting up the civil rights statutory provisions of § 1981 et seq. than it
was with the usurpation of state law where such was not necessary.

starts with the basic assumption that Congress did not intend to displace state laws." <u>Maryland v.
Louisiana</u>, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128 (1981) (preemption case).  While it is at
times necessary to flex the federal muscle when federal and state law conflict, such flexing
should be done only as a last resort.  While preemption is not the issue here, there is no reason to
ignore basic principles of federalism in applying privilege law.

Finally, this entire action, including the federal § 1983 claim, could have been
brought in state court.[6]  The state court would apply state privilege law.  In addition, in a federal
court civil rights case in which the federal claims drop out, it is not beyond the pale to have a
case in which supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, is exercised over only
state claims.  In such cases, only state privileges seemingly would apply.  Thus, in mixed claim
cases where federal and state privileges are consistent, federal cases which fail to consider state
privilege law run an unnecessary risk of creating ad hoc, or varyingly stated, privilege standards,
depending on whether the lawsuit is brought in state or federal court, or whether federal claims
ultimately survive.[7]

The inevitable question is – if the state and federal privileges at issue are
consistent, why not simply apply federal privilege law?  As discussed in <u>Pagano</u>, the point of
considering state law as a guide is not to determine whether a specific privilege exists, but to
determine how to perform the "balancing" that most privilege determinations, state or federal,
require.  Judges frequently are tempted to create multi-pronged tests for deciding federal
common law privilege issues, born from individual creativity (and sometimes from the myopia of
having considered the issues in particular cases).  In contrast, similar state privileges frequently

---

[6]  Federal courts have original, but not exclusive, jurisdiction over § 1983 claims pursuant
to 28 U.S.C. § 1343; thus, state courts are fully authorized to hear §1983 claims.  <u>Allen v.
McCurry</u>, 449 U.S. 90, 101 S. Ct. 411 (1980).

[7]  <u>Cf. Menses v. U.S. Postal Service</u>, 942 F. Supp. 1320, 1322 (D. Nev. 1996) (since
Federal Tort Claims Act cases can be brought only in federal court, there is a need for national
uniformity in rules of evidence, and no corresponding need to apply state privilege law even
though the substance of the claims is decided by reference to the state law).

1   are codified privileges which have received the attention and consideration of the peoples'

2   representatives in the respective legislatures, including competing considerations of any

3   balancing applicable to those privileges.  In terms of setting policy, the wisdom of the collective

4   legislature is generally greater than the wisdom of particular judges.  Our system of government

5   is based on this premise.  Moreover, the standards set forth by the legislature are generally more

6   structured and  more specific, and therefore provide a uniform starting point for any analysis.

7   Therefore, it makes little sense to avoid using as a guidepost standards the legislature has already

8   provided.

9          For all of the above reasons, in deciding whether privilege should preclude

10  disclosure of documents in a civil rights case, this court will continue to consider applicable state

11  statutes establishing policy and criteria for disclosure.  Jackson, supra and its progeny are

12  incorrect in their premise that the undersigned's cases have been overruled, and respectfully,

13  incorrect in their substance.

14         Governmental Privilege.[8]   The federal privilege applicable to the government

15  interest in preserving confidentiality of law enforcement records has various names: (1) the

16  "official information privilege," Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir.

17  1991) (employment discrimination case which raised only federal claims); (2) the "law

18  enforcement privilege," In re Department of Investigation of City of New York, 856 F.2d 481,

19  483-84 (2d Cir. 1988) (applying privilege to protect investigative agency with dual criminal and

20  civil functions); Morrissey v. City of New York, 171 F.R.D. 85, 90 (S.D.N.Y. 1997) (finding,

21  with guidance from state law enforcement privilege, that law enforcement privilege is somewhat

22  narrower than official information privilege); and (3) a type of "executive privilege," Siegfried v.

23  City of Easton, 146 F.R.D. 98, 101 (E.D. Pa. 1992).  The federal privileges are based on the

24

25        [8]  Defendants term the privilege as a general right to privacy; however, they do cite to Cal.
    Penal Code § 832.7 and Cal. Evid. Code § 1043 which more specifically pertain to peace officer
26  personnel records and the corresponding federal governmental privilege.

1    following rationale:

2            The purpose of this privilege is to prevent disclosure of law
             enforcement techniques and procedures, to preserve the
3            confidentiality of sources, to protect witness and law enforcement
             personnel, to safeguard the privacy of individuals involved in an
4            investigation, and otherwise to prevent interference with an
             investigation.

5

6    In re Dept. of Investigation, 856 F.2d at 484.

7            This federal "qualified" governmental privilege is consistent with California

8    statutes according a qualified privilege to peace officer personnel records.  Cal. Penal Code §

9    832.7.[9]   Peace officer personnel records may be disclosed only pursuant to court order.  Id.

10   Disclosure requires "good cause" (Cal. Evid. Code §1043),[10] relevance, and unavailability by

11   other means (Cal. Evid. Code §1045). [11]

12   _____

13      [9] Cal. Penal Code § 832.7 provides in part:

14      (a)  Peace officer or custodial officer personnel records and records maintained by any
        state or local agency pursuant to Section 832.5, or information obtained from these
15      records, are confidential and shall not be disclosed in any criminal or civil proceeding
        except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.
16
        [10] Cal. Evidence Code § 1043 provides in part:
17
        (a)     In any case in which discovery or disclosure is sought of peace officer or custodial
18              officer personnel records . . . the party seeking the discovery or disclosure shall
                file a written motion with the appropriate court or administrative body. . .
19      (b)     The motion shall include . . . (3) Affidavits showing good cause for the discovery
                or disclosure sought ...
20
        Cal. Evid. Code § 1046 requires the party alleging excessive force who seeks
21      disclosure to include a copy of the police report setting forth the circumstances
        under which the party was stopped and arrested.  Such procedural nuances of
22      asserting privilege in state court, including who must assert the privilege, how it
        must be asserted, or who bears the burden of establishing the privilege or its
23      exception do not concern the court.  Rather, the substantive disclosure criteria and
        the strength of the state's interest in preventing disclosure, as demonstrated by the
24      statutes, are the matters of concern.

25      [11] Cal. Evid. Code § 1045 provides:
                (a) Nothing in this article shall be construed to affect the right of
26              access to *records of complaints, or investigations of complaints,* or

                                                8

The California statutes codifying the governmental privilege balance the need for disclosure with the government's legitimate need to acquire and maintain confidential information for sensitive activities.  See County of Los Angeles v. Superior Court, 18 Cal. App. 4th 588, 22 Cal. Rptr. 2d 409 (1993); People v. Superior Court for County of Sacramento, 19 Cal. App. 3d 522, 97 Cal. Rptr. 118 (1971).  As these cases demonstrate, the California

> discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer or custodial officer ... participated, or which he or she perceived, and *pertaining to the manner in which he or she performed his or her duties, provided that information is relevant* to the subject matter involved in the pending litigation.
>
> (b) In determining relevance the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure:
>
> (1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought.
>
> (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.
>
> (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.
>
> (c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

(emphasis added.)

The undersigned has found the proviso of § 1045 that information will be deemed per se irrelevant if it includes "complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation," too rigid to comport with federal law, in which "remoteness" is a matter generally weighed in determining the relevance of particular information.  "[T]he overall balancing provisions contained within [Fed. R. Civ. P.] 26(b) [dictate that] . . . [t]he court must carefully assess the request for discovery in light of . . . the remoteness of sought discovery to the issues in the case."  Martinez, 132 F.R.D. at 682.  That analysis is confirmed.

9

1   Legislature understood quite well the need for some secrecy in government affairs, and was

2   aware that permitting unrestricted disclosure might chill the ability of government officials to

3   obtain candid, confidential information from persons otherwise reluctant to become involved or

4   influenced by interests of self-preservation.  It is critical to note that Cal. Evid. Code § 1045

5   strikes the state balance in favor of disclosing internal investigations pertaining to the manner in

6   which a peace officer performed his or her duties, *so long as they are relevant* to pending

7   litigation.  Accordingly, relevance is the dispositive factor in directing disclosure of internal

8   affairs investigations.[12]

9              Individual Privilege.  In considering whether the privacy interests of individuals

10  outweigh the need for disclosure of information in a civil rights case such as this, this court will

11  continue to consider the following factors in balancing individual interests against the need for

12  disclosure of sensitive information:

13              (1) the probable encroachment of the individual's privacy right if
             the contested action is allowed to proceed, and the magnitude of
14           that encroachment; (2) whether the encroachment of the privacy
             right would impact an area that has traditionally been off limits for
15           most regulation; (3) whether the desired information is available
             from other sources with less encroachment of the privacy right; (4)
16           the extent to which the exercise of the individual's privacy rights
             impinge on the rights of others; and (5) whether the interests of
17           society at large encourage a need for the proposed encroachment.

18  Pagano, 145 F.R.D. at 698-699.

19  IN CAMERA REVIEW

20              Both parties have submitted letter briefs.  Defendants have submitted for *in*

21  *camera* review two documents concerning an incident that occurred on February 12, 2008,

22  involving defendant Johanson.  The court has reviewed the documents submitted and the

23  arguments of the parties.

24  _____

25      [12]  Internal affairs investigations are "investigations of complaints" covered by Cal. Evid.
    Code § 1045.  See City of Fresno v. Superior Court, 205 Cal. App. 3d 1459, 253 Cal. Rptr. 296
26  (1988).

1    The essence of this case is excessive force, and pursuant to <u>Martinez</u>, the only

2  standard applicable for adjudicating such cases is an objective reasonableness standard.

3  <u>Martinez</u>, 132 F.R.D. at 682, *citing* <u>Graham v. Connor</u>, 490 U.S. 386, 109 S.Ct. 1865 (1989).

4  Any evidence of evil intent or sadistic motive is not relevant to the inquiry. <u>Id.</u>  Therefore,

5  discovery of such evidence serves no purpose.  The only caveats to this standard are where a

6  municipality or county is named in regard to ratification of an officer's actions such that there

7  may be a custom or policy, or where punitive damages are alleged. <u>Id.</u> at 682-83.  Where

8  punitive damages are claimed, evidence of evil intent or reckless disregard does become relevant.

9  Nevertheless, such an exception does not warrant completely eliminating the general rule.  This

10  court set forth two situations permitting discovery of an officer's past record where punitive

11  damages are alleged: where proof of the allegations in the complaint would probably result in a

12  punitive damage award, and where the requested discovery indicates a reasonable possibility that

13  its disclosure would result in a verdict of punitive damages. <u>Id.</u> at 683.  Therefore, a degree of

14  balancing the need for discovery against the privilege claimed is still required.

15    The letter brief submitted by defendant Dawson indicates that he testified that the

16  confidential documents do not pertain to the Allison incident and do not concern the issue of why

17  defendant Johanson was released from probation on February 26, 2008.  It is true that plaintiffs

18  seek punitive damages and therefore other evidence of evil motive or malicious intent may be

19  relevant. <u>Martinez</u>, 132 F.R.D. at 683; <u>Hampton v. City of San Diego</u>, 147 F.R.D. 227, 229 (S.D.

20  Cal. 1993).   Nevertheless, the documents submitted *in camera* concern events which are not

21  relevant to the claims in this action as they do not pertain to how defendant Johanson may have

22  conducted himself in performing his duties in regard to this incident, especially because the other

23  incident occurred almost two months *after* the incident which is the subject of this litigation.  The

24  timing renders it difficult to ascribe evil motive to Officer Johanson earlier in time.

25    Nor are the documents relevant to the allegation of supervisory liability by

26  defendant Dawson for the same reason.  The allegation of failure to train and supervise Johanson

1   is premised on his knowledge *before* the incident, not after it was over.  Furthermore, plaintiffs

2   do not seek punitive damages against defendant Dawson.

3           Because the court finds the documents are not sufficiently relevant to the instant

4   litigation, Johanson's privacy interests will outweigh the need for disclosure, all factors being

5   considered.

6   CONCLUSION

7           Accordingly, after *in camera* review, IT IS ORDERED that the documents

8   submitted shall not be produced.

9   DATED: 06/12/09                          /s/ Gregory G. Hollows

10   GGH:076/Allison2716.ic.wpd                     UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26